**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRUSTEES OF THE MICHIGAN REGIONAL
COUNCIL OF CARPENTERS EMPLOYEE
BENEFITS FUND, et al.,

                Plaintiffs,                      Case No. 05-CV-70262-DT

v.

FOX BROTHERS COMPANY and THOMAS J.
FOX,

                Defendants.

_____/

**OPINION AND ORDER DENYING IN PART DEFENDANTS'
"MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56"**

Before the court is Defendants' February 24, 2005 "Motion for Summary

Judgment Pursuant to Rule 56," in which Defendants argue that there is no genuine

issue of fact that they are not liable for certain pension and fringe benefit contributions

sought by Plaintiffs.  Plaintiffs filed their response to Defendants' motion on March 25,

2005 and the court held a hearing in this matter on May 4, 2005.  For the reasons stated

below, the court will deny in part Defendants' motion.

**I.  BACKGROUND**

Defendants Fox Brothers Company and Thomas Fox (collectively "Fox Brothers")

are engaged in supplying siding and roofing materials to the construction industry.

According to Fox Brothers, they do not employ any installers for the siding and roofing

materials that they supply.  Rather, Fox Brothers avers that, although they often include

an "installation price" when quoting a materials price, they hire independent contractors

to perform this work.  (Def.'s Mot. Br. at 2.)  The installation rates included in quotes to

third parties are agreed upon between Fox Brothers and the installer-independent

contractors.  Defendants invoice their clients for the installation services provided by

these independent installers "as a service to its independent contractors" and then remit

payment to the installers once Fox Brothers' customers provide payment for both the

installation work and the materials.  (*Id.*)  Defendants' describe the terms of their

relationship with their installers as follows:

> [A]ll installers at the Jefferson Village site, and at every other site to which
> Fox Brothers supplies materials for that matter, are independent
> contractors.  They carry their own tools, their own insurances, their income
> is reported by 1099 rather than W-2 form.  Many of them work for other
> suppliers or general contractors and they each have autonomy in terms of
> whether they accept or reject an installation assignment . . . . None of the
> installers receive any employment benefits from Fox Brothers.  They are
> paid by the square of siding or roofing installed, not by the hour.

(Defs.' Mot. Br. at 6-7.)[1]

Plaintiffs ("the Funds") are trustees for a series of employee-benefits funds within

the meaning of the Employee Income Retirement Security Act of 1974 ("ERISA"),

serving the carpentry industry.  The Funds filed this action against Defendants pursuant

to Section 301 of the Labor Management Relations Act ("LRMA"), 29 U.S.C. § 185, and

Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) & 1145, as third-party

beneficiaries, to recover delinquent contributions that Defendants are allegedly

obligated to pay pursuant to the terms of a collective bargaining agreement.  Plaintiffs'

---

[1] Defendants also present the affidavits of three of their independent contractors
to support the nature of Fox Brothers' relationship with their installers.  (*See* Schalu Aff.;
Uleski Aff.; Ursic Aff.)  Defendants also include in their exhibits the contracts between
these installers and proof of liability insurance.  (*See id.*)  All of these installers testified
that they are self-employed, are responsible for their own tax reporting, carry their own
liability and workers compensation insurance, use their own tools, and have full
authority to accept or reject work offered by suppliers.  (Schalu Aff. at ¶¶ 1-3; Ursic Aff.
at ¶¶ 1-3; Uleski Aff. at ¶¶ 1-3.)

complaint comprises three counts against Fox Brothers: Count I seeks to recover

benefit contributions pursuant to an August 1, 2001 - July 31, 2003 collective bargaining

agreement between The Michigan Regional Council of Carpenters ("MRCC" or the

"Union") and The Michigan Carpentry Contractors Association, Inc. signed by Fox

Brothers, via addendum, on December 16, 2003; Count II seeks to compel an audit of

Fox Brothers' books and records; and Count III seeks to recover under the Michigan

Building Contract Fund Act, Mich. Comp. Laws § 570.151 *et seq.*

It is undisputed that, on or about December 16, 2003, Joseph Fox[2] signed an

addendum to a collective bargaining agreement between the Union and MCCA ("the

CBA"). (Pl.'s Resp., Ex. 1.)  The effective dates for the CBA were from August 1, 2001

through July 31, 2003.  (*Id.*)  Joseph Fox also executed a December 16, 2003

"Agreement for Weekly Contributions of Fringe Benefits" on behalf of Fox Brothers.

(Pl.'s Resp., Ex. 2.)  The parties dispute whether Fox Brothers must pay fringe benefit

contributions to the Funds as third party beneficiaries pursuant to this CBA.  Plaintiffs

maintain that Fox Brothers is bound to make contributions under the ordinary meaning

of the terms in these executed contracts, while Defendants maintain that Joseph Fox's

signature to the CBA addendum was procured by fraud, rendering the agreement void

*ab initio.*

Defendants' first contact with the Union is described by one of Fox Brothers'

installers, Edwin J. Uleski.  Mr. Uleski entered into a contract with Fox Brothers on June

4, 2002 and, sometime in the summer of 2003, was performing installation services at a

housing development known as Heritage. (Uleski Aff. at ¶ 4.)  According to him, a Union

[2] Joseph Fox is a principle in Fox Brothers Company.  (Fox Aff. at ¶ 1.)

3

representative, Toney Stewart, approached his crew and told them that he was going to "shut the site down" because Uleski and his crew were not union contractors. (*Id.* at ¶ 4.) Uleski contacted Tim Hill from Fox Brothers to determine whether the site was "a union site," but Hill was without such knowledge. (*Id.*) Uleski states that, after arguing briefly with Stewart, the Union representative insisted that his crew stop working unless they signed up to become union members. According to Uleski, he and his crew signed up based on the representation from Stewart that they would only have to pay dues for the Heritage site. (*Id.*)

Defendants' next contact with the Union occurred in September 2003. Fox Brothers submitted a bid for a contract to provide materials and installation for the siding and roofing for a housing development in the City of Detroit known as "Jefferson Village." (Fox. Aff. At ¶ 2.) Crosswinds Communities, the general contractor, accepted the Defendants' bid and awarded Fox Brothers the contract. (*Id.;* Hill Aff. at ¶¶ 1-4.) Nothing in the written contract between Crosswinds and Fox Brothers required the use of union labor. Sometime in November 2003, before Fox Brothers had begun work at Jefferson Village under their contract with Crosswinds, Toney Stewart, a representative for the Union, contacted Fox Brothers' installation manager Tim Hill. (Fox. Aff. at ¶ 5.) Hill described the contact with Stewart as follows:

> Sometime during November of 2003, before we had started supplying materials under the Crosswinds contract, [Stewart] called me and told me that all installers at the Jefferson site had to join the union. I told Mr. Stewart that the installers were not employed by Fox Brothers. Mr. Stewart insisted that this did not matter and that in order for them to work at the site, they would have to sign up and Fox Brothers would have to sign a contract. I asked Mr. Stewart what the benefit to Fox Brothers would be and he indicated that if the installers did not join the union, Fox Brothers would not be able to fulfill its contract on the side. I asked Mr. Stewart what the cost would be and he told me that it would cost $90.00

4

every two months for dues per crew member.  Mr. Stewart never
mentioned any fringe benefit contributions and I never asked about any.  I
contacted Joe Fox and told him that it looked like our installers would have
to join the union to be able to work at the Jefferson Village site.  We
agreed that Fox Brothers would help defray the cost of the dues if the
installers decided to sign up.  We further discussed the fact that if the
installers did not wish to sign up, and union membership was required to
work on the site, that Fox Brothers would pull out of its contract with
Crosswinds.

(Hill Aff. at ¶ 5.)

The next contact between the Union and Fox Brothers was on December 16,

2003.  Stewart and another representative, Edward Shepler, arrived at Joseph Fox's

office, insisting that Fox Brothers had to sign an addendum to the CBA to perform its

contract with Crosswinds at the Jefferson Village project.  (Fox Aff. at ¶ 6; Hill Aff. at ¶

6.)  Both Hill and Fox explained that Fox informed Stewart that it had no employees and

that all of its installers were independent contractors, yet Stewart insisted that the only

way Fox Brothers' installers would be able to perform was if Fox Brothers signed the

CBA addendum.  (*Id.*)  Both of Defendants' representatives also testified that Stewart

assured Fox that the addendum was "site specific" and would apply only to those

installers working the Jefferson Village location.  (*Id.*)  In fact, both Hill and Fox testified

that Fox suggested that Fox Brothers might be better off to run the Jefferson Village

contract through a separate entity, but Stewart informed Mr. Fox that the site-specific

nature of the agreement made such a course of action unnecessary.  (*See id.*)

Several months after signing the CBA, Defendants received from the Union a

request for an audit of its invoices associated with the Jefferson Village development.

(Fox Aff. at ¶ 7.)  This audit request led to a meeting between Hill, Stewart, Kim

Vaughn, and Union lawyer Bryan Beckerman.  During this meeting, Hill learned that the

5

Union sought to audit all of Defendants' books and records for all work done in southeast Michigan. (Hill Aff. at ¶ 7.) In his affidavit, Hill describes his response to the Union's suggestion that the agreement signed on December 16, 2003 was not limited to the Jefferson Village site.

> At [the] meeting, Ms. Vaughn insisted that the union was entitled to audit all of the books and records of Fox Brothers for southeast Michigan. I protested reminding her of the fact that all of our installers were independent contractors. Someone said, "we don't want to hear that." I asked Mr. Stewart about his assurance that Fox Brothers' signature on the Addendum only applied to those installers who agreed to sign up for union representation at the Jefferson Village site. Mr. Stewart acknowledged this to Ms. Vaugh. Ms. Vaugh protested stating something like, "you can't set it up that way." Mr. Stewart responded, "yes, they can. They are only obligated on the Jefferson site." Shortly after, Mr. Stewart was called out of the meeting room. When he returned, Mr. Stewart made some comment that "this is only going to cost Fox Brothers pennies" and then he refused to re-acknowledge his earlier promise that the Addendum was site specific. At that point, I concluded the meeting advising everyone present I would have to get Joe Fox involved in the issue.

(Hill Aff. at ¶ 7.)

On October 7, 2004, Defendants sent a letter giving the Union formal notice of their intent to terminate any contractual obligations incurred by signing the December 16, 2003 addendum to the CBA. (Defs.' Mot. Br., Ex. A.) The Funds filed this action seeking to recover contributions due under the CBA and Fox Brothers' agreement to make required contributions weekly.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment motions, provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

6

material fact and that the moving party is entitled to judgment as a matter
of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that there is

no genuine issue as to any material fact, and summary judgment is to be entered if the

evidence is such that a reasonable jury could find only for the moving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mt. Lebanon Per. Care*

*Home, Inc. v. Hoover Univ., Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  It is not necessary

for the moving party to support its motion with affidavits or other similar forms of

evidence; rather, the movant need only show that "there is an absence of evidence to

support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986).

The moving party may meet his initial burden by pointing out to the court that the

respondent, having had sufficient opportunity for discovery, has no evidence to support

an essential element of his case.  *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087

(6th Cir. 1996).  If the moving party meets this initial burden, the non-moving party must

then present admissible evidence establishing a genuine material issue of fact.  *Id.*  The

non-moving party cannot rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in

order to defeat a properly supported motion for summary judgment." *Id.*  The party who

bears the burden of proof at trial must present evidence establishing a jury question as

to each element of his claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Failure to present sufficient evidence on an essential element of a claim or

defense renders all other facts immaterial for purposes of summary judgment.  *Elvis*

*Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).  Although

7

the non-moving party is entitled to a review of the evidence in the light most favorable to him, he is required to do more than simply show that there is some "metaphysical doubt as to the material facts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co.*, 475 U.S. at 586)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. Therefore, the court must necessarily examine the evidence provided in a light that is most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), and decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Ander*son, 477 U.S. at 251-252.

### III.  DISCUSSION

Defendants make two arguments in support of their Rule 56 motion.  First, Defendants argue that they do not employ any statutory "employees" as that term is defined under ERISA and that, consequently, Plaintiffs' claims fail as a matter of law. Second, Defendants argue that Joseph Fox's signature on an addendum to the collective bargaining agreement is void *ab initio* because it was procured by the Union's fraud in the execution.

### A.  The Employee/ Independent Contractor Distinction

Defendants first argue that there is no issue of fact that the installers hired by Fox Brothers are independent contractors, not employees as that term is defined under ERISA, 29 U.S.C. § 1002(6).  Defendants claim that the Funds are "only entitled to contributions under ERISA to the extent the contributions are due for 'employees.'"

8

(Def.'s Mot. Br. at 5.)  Defendants rely on *Nationwide Mutual Ins. Co. v. Darden*, 503

U.S. 318 (1992) and *Trustees of the Resilient Floor Decorators Ins. Fund v. A&M*

*Installations, Inc.*, 244 F. Supp. 2d 791 (E.D. Mich. 2003) in support of this argument.[3]

Conversely, Plaintiffs argue that Defendants fail to recognize their contractual

obligation to contribute for all work covered under the CBA, regardless of whether that

work is performed by "employees" or independent contractors.  Plaintiffs maintain that

the two cases cited by Defendants are inapposite, relying instead on *Mason Tenders v.*

*Abatement International/Advatex Associates, Inc.*, 82 F. Supp. 2d 175 (S.D.N.Y. 2000)

as relevant and persuasive authority.  Alternatively, if the court finds the employee/

independent contractor distinction relevant to its analysis, Plaintiffs ask for an

opportunity to conduct discover to examine the merits of Defendants' assertions

regarding ownership and control of alleged subcontractors.

The Funds point to the following provisions of the CBA in support of their

argument.

### Article III
### General Principles

**K.  Assignment**.  The Employer agrees that he will not, of his own
volition, enter into subcontracts for work covered by this Agreement to be

---

[3] Courts apply the common law agency test to determine whether a hired party is
an independent contractor or an employee under ERISA.  *Nationwide Mut. Ins. Co. v.*
*Darden,* 503 U.S. 318, 322 (1992).  The "common law" agency analysis requires the
court to consider the following factors: (1) the hiring party's right to control the manner
and means by which the product is accomplished; (2) the skill required by the hired
party; (3) the duration of the relationship between the parties; (4) the hiring party's right
to assign additional projects; (5) the hired party's discretion over when and how to work;
(6) the method of payment; (7) the hired party's role in hiring and paying assistants; (8)
whether the work is part of the hiring party's regular business; (9) the hired party's
employee benefits; and (10) the tax treatment of the hired party's compensation.  *Shah*
*v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004).

9

done at the site of construction, alteration, or repair of a building structure, or other work with any Employer who does not have a signed agreement with the Union; provided however, that where there is any dispute over work jurisdiction or assignment of work, such dispute shall be governed by Article II thereof.

. . .

### Article XV
### Sub-Contracting

A.  **Subcontracting**.  The Employer agrees not to sub-contract or sublet any work covered by this Agreement and to be performed at the site of construction to any person, firm or corporation not having a collective bargaining agreement with the Union.  The Union agrees not to sign collective bargaining agreements with any Employer who does not finish carpentry work only.

B.  **Liability.**  When an Employer sub-contracts or sublets work to be done at the site of construction to any person, firm, corporation not having a current collective bargaining agreement with the Union, he shall pay to the FACT Fund an amount equal to the wages which would have been earned by carpenters Employees had the Employer not sub-contracted the work to the person, firm or corporation not having a collective bargaining agreement with the Union.

(Pls.' Resp. Ex. 1 at 8, 28.)  Under these CBA terms, Plaintiffs claim that Fox Brothers is required "to pay an amount to the FACT Fund equivalent to the wages which would have been earned by carpenters Employees."[4]  (Pls.' Resp. at 3.)

*Nationwide Mutual Insurance Company v. Darden* is distinguishable from this case based on the factual circumstances and ERISA claims asserted.  In *Nationwide,* plaintiff-insurance agent Robert Darden operated an insurance agency under the terms of several contracts that he had signed with Nationwide Mutual Insurance Company. Under the parties' agreements, Darden promised to sell only Nationwide insurance

---

[4] The "FACT" Fund is "the Fund for the Advancement of the Carpentry Trade." (Pls.' Mot. Ex. 1 (CBA at p. 15).)

10

policies, in exchange for commissions on his sales and enrollment in Nationwide's company retirement plan, an ERISA covered plan. *Nationwide*, 503 U.S. at 320. The contractual terms also provided that if Darden, within one year after his termination and at any place within 25 miles of his prior business location, sold insurance policies from Nationwide's competitors, he would forfeit his retirement benefits under the ERISA plan. *Id.* Nationwide Insurance Company ended its contractual relationship with Mr. Darden and he began selling insurance policies from Nationwide's competitors. The company reacted by disqualifying him from receiving ERISA plan benefits. *Id.*

Darden, arguing that his benefits were vested and nonforfeitable under 29 U.S.C. § 1053(a), filed suit against Nationwide to recover benefits under the plan pursuant to 29 U.S.C. § 1132(a). *Id.* Section 1132(a) enables an ERISA plan "participant" to enforce the substantive provisions of the Act. The Act defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). Therefore, Darden's ERISA claim could succeed only if he was Nationwide's "employee" as defined by the statute. *Nationwide*, 503 U.S. at 321.

On appeal from the Fourth Circuit, the Supreme Court examined the definition of an employee as "any individual employed by an employer" and held that courts are required to apply the common law agency principles in determining whether a party is an "employee" under the statute. *Id.* at 322 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)); 29 U.S.C. § 1002(6). Unlike the current action, *Nationwide* did not involve an attempt by ERISA benefit fund trustees to enforce the terms of a collective bargaining agreement.

11

The status of Fox Brothers' installers as employees or independent contractors, however, still impacts the Funds' ability to recover contributions under ERISA, 29 U.S.C. §1145.  *See Resilent Floor Decorators Vacation Fund v. Contract Carpet Inc.*, 70 F.3d 116, No. 93-2594, 1995 WL 611148, at *4 (6th Cir. Oct. 17, 1995) (noting that if the installers of a company alleged to be an alter ego of another company bound by the terms of a collective bargaining agreement were not "employees" under ERISA that company could not be liable for contributions); *Trustees of the Resilient Floor Decorators Ins. Fund v. A&M Installations, Inc.*, 244 F. Supp. 2d 791, 796 (E.D. Mich. 2003).

In *A&M Installations*, trustees to a series of multi-employer fringe benefit funds for union workers in the flooring industry, similar to the trustees of the Funds in the instant case, sought to recover fringe benefit contributions from Carpet Workroom Incorporated.  *A&M Installations*, 244 F. Supp. 2d at 793.  Carpet Workroom Inc. was a non-union employee and never signed a collective bargaining agreement with the union. However, early in 1997, one of its employees formed a separate corporate entity, A&M Installations, Inc.  A&M Installations employed a unionized workforce and entered into a collective bargaining agreement with the union.  A&M's founder also remained an employee of Carpet Workroom until 2001.  After the formation of A&M, Carpet Workroom bid on a General Motors Corporation project and was awarded a contract. The General Motors contract, however, required union labor and Carpet Workroom engaged A&M (as a union shop) to perform the carpet installation.  The plaintiffs argued that Carpet Workroom evaded the collective bargaining agreement by creating A&M as an alter ego and, as such, the CBA between A&M and the union applied in full scope to

Carpet Workroom. *Id.* at 793-94. Carpet Workroom denied liability for contributions under the CBA that it never signed, arguing that its carpet installers were independent contractors and that A&M was not an alter ego. *Id.*

The district court confronted two issues: (1) whether Carpet Workroom's installers "employees" under ERISA or independent contractors; and (2) whether A&M and Carpet Workroom were alter ego corporations. The court applied the common law agency principles as required by *Darden*, ruling that the evidence presented failed to establish an issue of fact on whether Carpet Workroom's installers were employees. *Id.* at 796-99. The court explained that because Carpet Workroom's installers were independent contractors, "Carpet Workroom, *even if found to be an alter ego to A&M* [and consequently bound to the CBA terms], cannot be required to make fringe benefit contributions." *Id.* at 799 (emphasis added).

Sections 502 and 515 of ERISA give a district court subject matter jurisdiction to hear an action brought by benefit plan trustees to enforce an employer's promise to make contributions. *See* 29 U.S.C. §§ 1132(e)(1) and 1145; *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 312-13 (8th Cir. 1990); *see also Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988) ("The liability created by § 515 may be enforced by trustees of a plan by bringing an action in federal district court pursuant to § 502."). However, "the protections of ERISA apply only to employees, and not independent contractors." *A&M Installations*, 244 F. Supp. 2d at 796; *see also Resilient Floor Decorators Vaction Fund v. Contract Carpet Inc.*, 1995 WL 61148 at * 4 ("If the installers are not employees within the

13

meaning of ERISA, 29 U.S.C. § 1002(6), [the employer] cannot be liable for

contributions.").  As the *A&M Installations* court explained:

> Plaintiffs bring this action pursuant to the Employment Retirement Income
> Security Act of 1974 (hereinafter "ERISA").  *See* 29 U.S.C. § 1001 *et seq.*
> In particular, Plaintiffs note that, under ERISA, any employer that is
> required to make contributions to a multiemployer fringe benefit fund, such
> as the ones in issue in this action, must in fact make such contributions.
> *See* 29 U.S.C. § 1145.  Further, the trustees of such multiemployer fringe
> benefit funds, such as Plaintiffs, have the right to seek the recovery of
> delinquent contributions.  *See* 29 U.S.C. § 1129(g) [sic].  Although ERISA
> establishes such rules, the protections of ERISA apply only to employees,
> and not independent contractors. *See* 29 U.S.C. § 1002(6); *see also*
> *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117
> L.Ed.2d 581 (1992).  Therefore, if Carpet Workroom's installers are
> independent contractors, then Carpet Workroom does not need to
> contribute to Plaintiffs' trust fund.
>
> . . .
>
> Not only do Plaintiffs lack the authority to collect contributions for the labor
> performed by independent contractors, but the law prohibits them from
> collecting funds that are not for the benefit of an employer's employees.
> Section 302 of the Labor Management Relations Act prohibits an
> employer from giving money to any type of labor organization. *See* 29
> U.S.C. § 186(a).  There are exceptions to this general rule; relevant here
> is the following: "money or other things of value paid to a trust fund
> established by such representative, for the sole and exclusive benefit of
> the employees of such employer, and their families and dependents...."
> 29 U.S.C. § 186(c)(5).  Thus, while an employer can contribute money to a
> fringe benefit trust fund, it may only do so on behalf of its employees and
> their families.  Consequently, if Carpet Workroom's installers are
> independent contractors, and not employees, then Carpet Workroom
> would be prohibited from making contributions to the trust funds.

*A&M Installations Inc.*, 244 F. Supp. 2d at 796-97.

Here, there remains a dispute regarding the mixed question of fact and law as to

whether Fox Brothers' installers are "employees" or independent contractors for

purposes of ERISA.  Defendants' uncontroverted evidence presented to the court would

establish that its installers are not employees as defined by ERISA; however Plaintiffs
have requested additional time for discovery on this issue.

"Before ruling on summary judgment motions, a district judge must afford the
parties adequate time for discovery, in light of the circumstances of the case." *Plott v.
General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). To
survive a summary judgment motion, however, the non-moving party must do more than
make vague allegations or conclusory statements regarding the need for discovery.
*See* Fed. R. Civ. P. 56(f); *Triplett v. Connor,* 109 Fed.Appx. 94 (6th Cir. 2004); *Lanier v.
Bryant,* 332 F.3d 999, 1006 (6th Cir. 2003) ( "Nebulous assertions that more discovery
time would have produced evidence to defeat summary judgment will be unavailing.").

Plaintiffs filed their complaint on January 25, 2005. Defendants filed their answer
on February 24, 2005, along with their motion for summary judgment. The court has not
issued a scheduling order in this case and Plaintiffs have not been afforded a
reasonable amount of time to discover information related to the employment status of
Fox Brothers' installers, information not readily available to Plaintiffs. As such, the court
declines to rule on this basis of Defendants' motion.

Plaintiffs' argument that *A&M Installations* is distinguishable from the instant case
because Fox Brothers signed the collective bargaining agreement is also not
persuasive. First, the *A&M* court ruled that even if the CBA applied to the non-union
employer, it was not responsible for contributions unless it engaged "employees" under
the statutory definition of ERISA. *A&M Installations*, 244 F. Supp. 2d at 799. Second,
the very terms of the CBA at issue in this case require contributions to the Funds from
signatory employers based on work performed by "*Employees*" covered by the

15

agreement.  (*See* Pls.' Resp. Ex. 1 at Article V.)  Plaintiffs citation in their brief to Article

V, Section K and Article XV, Sections A & B of the CBA is a bit misleading on this point.

      While the CBA provisions cited by the Funds set forth an obligation for signatory

employers not to subcontract work to non-union subcontractors, the "Liability" provision

relates only to one fund identified in Article V.  Section B of the "Sub-Contracting" Article

provides that when an employer hires a non-union subcontractor "he shall pay to the

*FACT Fund* an amount equal to the wages which would have been earned by

carpenters Employees, had the Employer not sub-contracted work to the person, firm or

corporation not having a collective bargaining agreement with the union."  When

assuming the validity of the CBA signed by Fox Brothers on December 16, 2003, this

provision would require payment to the FACT Fund and no others.  Plaintiffs make no

showing that they have standing to assert the rights of the FACT Fund and Plaintiffs'

counsel acknowledged during oral argument that neither the FACT Fund nor its trustees

are plaintiffs in this case.

      Indeed, when the court examined the other funds identified in the Article V of the

CBA, it found that benefit *contributions* to the various funds by signatory employers are

required for work performed by *employees* covered by the CBA.  For example, the

"Health and Welfare" provision states that an "Employer shall pay . . . the amount set

forth in Addendum A *for all hours worked by each Employee covered by this

Agreement.*"  (Pls.' Resp. Ex. 1 at 11 (CBA at Art. V § D).)  The "Pension" fund provision

states that the "Employer shall pay . . . 12.82% of the actual hourly rate . . . of *each

Employee covered by this Agreement . . . .*"  (*Id.* (CBA at Art. V. § E).)  Similar language

is found in the CBA terms pertaining to contributions to the MRCC Annuity Fund, the

Detroit Carpenters Joint Apprenticeship and Training Trust Fund, the Industry
Advancement Fund, and the FACT Fund.  The court finds no contractual definition of
"employee," therefore whether contributions are owed to these various Funds under the
terms of the CBA addendum executed on December 16, 2003 also turns on whether
Fox Brothers hires independent contractors or employees.

During oral argument, Defendants' counsel raised for the first time an argument
that the Union waived any rights to collect fringe benefits under the CBA because its
agent, Toney Stewart, acknowledged the fact that Fox Brothers did not use employees
for installation services and that they used only independent contractors.  The
uncontroverted testimony reveals that Joe Fox informed Stewart that Fox Brothers had
no employees and that all of its installers were independent contractors.  (Fox Aff. at ¶
6.)  According to Fox's sworn statement, Stewart "indicated that the Union would take
care of getting the individual subcontractors signed up."  (*Id.*)  Defendant, however, did
not raise this waiver argument in its motion or brief.  Accordingly, the court will defer any
ruling on this issue until formally presented and briefed by the parties.

### B.  Defendants' Fraud in the Execution Defense

Under traditional principles of contract law, third-party beneficiaries of a contract
are subject to the same enforcement defenses as the original contracting party.  *See,
e.g., Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) ("The rights of third-
party beneficiaries typically are subject to any defenses that the promisor could assert in
a suit by the promissee) (citing J. Clamari & J. Perillo, *The Law of Contracts* § 17-10 (3d
ed. 1987)); *Bituminous Coal Operators' Ass'n, Inc. v. Connors*, 867 F.2d 625, 632 (D.C.
Cir. 1989).  Applied in this context, these principles would permit the Funds to enforce

17

the terms of the CBA signed by Fox Brothers, subject to any contract defenses that Fox

Brothers might have.  *See MacKillop v. Lowe's Market, Inc.,* 58 F.3d 1441, 1443-44 (9th

Cir. 1995); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313-14 (2d Cir.

1990); *see also Plumbers & Pipefitters Local No. 572 Health and Welfare Fund v. A&H

Mechanical Contractors, Inc.*, 100 Fed.Appx 369, No. 02-6131, 2004 WL 1208873 (6th

Cir. June 1, 2004).

Courts, however, apply these general third-party beneficiary principles differently

in the context of an action to collect contributions by an ERISA plan under 29 U.S.C. §

1145.  *Lewis v. Benedict Coal* Corp., 361 U.S. 459, 468-69 (1960); *Benson*, 907 F.2d at

313 (citing *Lewis* and noting that collective bargaining agreements are an exception to

the general rule that a third-party beneficiary steps into the shoes of the promisee).  As

the Seventh Circuit has explained, "[t]he Funds' right to collect contributions under §

515 of ERISA is like the right of a holder in due course of commercial paper, in that the

Funds are 'entitled to enforce the writing without regard to understandings or defenses

applicable to the original parties.'"  *Laborers' Pension Fund v. Concrete Structures of

the Midwest Inc.*, 999 F.2d 1209, 1211 (7th Cir. 1993) (quoting *Central States Areas

Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989)); *see also

Trustees of Detroit Carpenters Health and Welfare Fund v. River City Constr. Co.*, 99

Fed.Appx. 612, No. 02-1291, 2004 WL 1166544 (6th Cir. May 18, 2004) (citing *Lewis v.

Benedict Coal Corp.*, 361 U.S. 459, 468 (1960)) ("Courts do not regard a CBA involving

an employee-benefits trust fund as the typical third party beneficiary contract.").

Section 1145 provides:

Every employer who is obligated to make contributions to a multiemployer
plan under terms of the plan or under the terms of a collectively bargained

agreement shall, to the extend not inconsistent with law, make such contributions of such plan or agreement.

29 U.S.C. § 1145.

Various courts have construed this provision to preclude the assertion of certain contract law defenses against trustees of benefit funds seeking to recover delinquent contributions. *See, e.g., Benson*, 907 F.2d at 314 (the stated purpose of § 515 is to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law–other than 29 U.S.C. § 186"); *MacKillop*, 58 F.3d at 1443-44 (benefits plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries even if employers fail to keep their promises to contribute); *see also A&H Mechanical Contractors, Inc.*, 12004 WL 1208873 at *5 (noting that numerous courts have construed § 515 of ERISA to preclude contract law defenses "that would transform run-of-the-mill collection efforts by plan trustees into expensive and complex litigation relating to the employer-union relationship"); *Nyeholt Steel, Inc.*, 976 F. Supp. at 688 n.10 ("Courts generally construe Section 515 of ERISA, 29 U.S.C. § 1145, 'as sharply limiting the defenses available to employers in actions seeking payment of delinquent contributions.'").

A recent panel of the Sixth Circuit summarized the reasoning of various courts of appeals interpreting § 515.[5]

_____

[5] Although unpublished decisions in the Sixth Circuit are not binding precedent, s*ee Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir 1996) (unpublished opinions "carry no precedential weight [and] have no binding effect on anyone other than the parties to the action."); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir 2000) (unpublished decisions are not binding precedent), their reasoning may be "instructive" or helpful. *See Boyd v. Yukins* 99 Fed.Appx. 699, 703, 2004 WL 1193952, *4 (6th Cir.

> Because employee benefit plans frequently remain obligated to pay
> benefits to employees even when employers do not make their required
> contributions, and because "anything less may well saddle the plans with
> unfunded obligations," *Gerber Truck,* 870 F.2d at 1153, Congress has
> given these plans the upper hand in § 515 litigation in order to permit
> "efficacious[ ]" recovery of "delinquent contributions," 126 Cong. Rec.
> 23,039 (1980) (remarks by Rep. Thompson).

*A&H Mechanical Contractors, Inc.*, 12004 WL 1208873 at *5.

Congress passed § 515 of ERISA in an effort to shield ERISA plans seeking to recover benefits from finding themselves in the middle of complex labor-management disputes. *See Iron Workers Local No. 25 Pension Fund v. Allied Fence Sys.*, 922 F. Supp. 1250, 1255 (E.D. Mich. 1996). Section 515 precludes employers from appealing to defects in a collective bargaining agreement's formation "such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law" to justify a failure to make contributions to the third-party beneficiary funds. *Central States Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989).

For example, numerous federal courts of appeals have held that an employer may not assert a lack of union majority status at the time of CBA formation as a defense in an ERISA § 515 action to recover delinquent benefits contributions. *See Benson*, 907 F.2d at 314; *Berry v. Garza*, 919 F.2d 87 (8th Cir. 1990); *MacKillop,* 58 F.3d at 1441. Courts have done so, despite recognizing the harsh results that may fall on employers who must contribute to employee-benefit funds without a preliminary

---

May 27, 2004) ("Our unpublished case of *Mix v. Robinson,* 64 Fed.Appx. 952, 957-58 (6th Cir. 2003), is instructive."); *Combs v. Int'l Ins. Co.* 354 F.3d 568, 593 (6th Cir ,2004) (although *Willits* [*v. Peabody Coal Co.*, 188 F.3d 510, 1999 WL 701916 (6th Cir. Sept. 1, 1999)] is an unpublished opinion, its reasoning is instructive.").

determination of whether there was majority support for the union to enter a valid

collective bargaining agreement.[6]  *See Benson*, 907 F.2d at 316.  The *Benson* court

also recognized that an employer's obligation to contribute to benefit funds under

ERISA § 515 only lasts during the effective period of the collective bargaining

agreement and that a National Labor Relations Board determination of CBA invalidity

based on lack of majority status would give occasion for an employer to seek

appropriate relief from any judgment entered following a cause of action founded on 29

U.S.C. § 1145.  *Benson*, 907 F.2d at 316.

There are three generally recognized contract defenses available to an employer

defending against a third-party beneficiary claim for delinquent contributions under

ERISA § 515: (1) illegality of the original contract (i.e. that the pension contributions

themselves are illegal); (2) arguments that the contract was void at its inception (e.g. by

fraud in the execution); and (3) decertification of the union by the employees.  *See

Alfred Miller Gen. Masonry*, 157 F.3d 404, 408 (5th Cir. 1998); *Agathos*, 977 F.2d at

1505; *Nyeholt Steel Inc.*, 976 F. Supp. at 688 n.10.  Defendants rely on fraud in the

execution.

---

[6] Authority to collectively bargain is found in a union selected by a majority of
employees within an appropriate bargaining unit because the union is democratically
selected as the employees' exclusive representative under § 9(a) of the Wagner Act.
29 U.S.C. § 159(a).  However, a collective bargaining agreement entered into between
an employer and union without majority support not only constitutes an unfair labor
practice by the employer, but also results in an invalid and unenforceable agreement.
*See Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB,* 366 U.S. 731, 737 (1961);
*Local 58, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Southeastern Michigan
Chapter, National Elec. Contractors Ass'n,* 43 F.3d 1026, 1033 (6th Cir. 1995) ("The
employer and union may not enter into an agreement when the union has not been
selected as the exclusive bargaining representative.").

"Obligations under a collective bargaining agreement, like those under contracts in general, rest ultimately on the principle of mutual assent." *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1503 (9th Cir. 1994). Collectively bargained agreements emerge as the result of mutual assent and not legal compulsion. *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108 (1970). An employer's assent to be bound by a collective bargaining agreement is often expressed by executing a "short form agreement." *Carpenters Local v. W.D. George Constr. Co.*, 792 F.2d 64, 68-69 (6th Cir. 1986). This type of agreement is one where "a smaller, usually independent contractor . . . consents to be bound by a collective bargaining agreement negotiated by a union and mutli-employer bargaining group representing contractors within a particular jurisdiction." *Nyeholt Steel*, 976 F. Supp. at 688 (citing *Carpenters Local v. W.D. George Constr. Co.*, 792 F.2d 64, 68-69 (6th Cir. 1986)). "[T]he test for determining whether an employer is bound by the results of multi-employer bargaining is whether the employer has indicated from the outset 'an unequivocal intention to be bound by group action and collective bargaining.'" *Carpenters* Local, 792 F.2d at 68-69 (citing *McAx Sign Co., Inc. v. NLRB,* 576 F.2d 62, 65 (5th Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979)).

Fraud in the execution, sometimes called "fraud in the factum" arises when "a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract." *Nyeholt Steel*, 976 F. Supp. at 688 (quoting Restatement (Second) of Contracts § 163 (1981)). Generally, "a party who signs a written agreement is bound by

22

its terms, even though he neither reads it not considers the legal consequences of

signing it." *Gilliam*, 737 F.2d at 1504; *see also Farm Bureau Mut. Ins. Co. v. Nikkel*, 596

N.W.2d 915 (Mich. 1999) (A party who signs a contract cannot seek to invalidate or

avoid enforcement of that contract on the basis that he or she did not read or

understand its terms absent a showing of fraud or mutual mistake.).  The general rule is

qualified by the principle that "he who signs a document reasonably believing [that] it is

something quite different than it is cannot be bound to the terms of that document."

*Gilliam*, 737 F.2d at 1504.

To prevail on its fraud in the execution defense, Fox Brothers must establish: (1)

that the union representative made representations that induced Fox Brothers to sign a

contract entirely different from the proposed site-specific contract; and (2) excusable

ignorance of the agreement's contents under the circumstances.  *See Agothos*, 977

F.2d at 1506; *Nyeholt Steel*, 976 F. Supp. at 690.  Defendants bear the burden to show

that the evidence presented establishes, as a matter of law under Rule 56, that the

collective bargaining agreement signed on December 16, 2003 was induced by fraud in

the execution and is void *ab initio*.

First, this court agrees with the *Nyeholt Steel* court's conclusion that "an

agreement that binds a party to the terms of a CBA for one job is of a different nature

than an agreement that obligates the party indefinitely."  *Nyeholt Steel*, 976 F. Supp. at

690 n.12.  Simply put, total assent to a collective bargaining agreement covering all

work is a fundamentally different contract than a short form agreement where a non-

union employer agrees to comply with the terms of CBA on a site-specific or one-job

basis.

23

The uncontroverted evidence presented by Defendants shows that Toney Stewart, a Union representative, appeared at two of Fox Brothers' work sites. He approached installers on the Heritage project and threatened to "shut the site down" because the installers were not union contractors. (Uleski Aff. at ¶ 4.) In addition, Stewart called Hill, Fox Brothers' installation manager, sometime in November 2003, insisting that only union installers would be permitted to work a the Jefferson Village site. Stewart later showed up at Joe Fox's office and obtained his signature on an addendum to the CBA representing to Fox and Hill that the agreement was site-specific. (*See* Hill Aff. at ¶ 6.) The undisputed record evidence establishes that Stewart was aware that Fox Brothers only assented to the CBA on a site-specific basis. In fact, Stewart informed Hill and Fox that Defendants need not establish a separate entity because the Union permitted site specific agreements. (*See id.*) Plaintiffs also fail to refute the testimony of Hill, explaining that Stewart represented the site-specific nature of the agreements to other union representatives during the meeting between Hill, Stewart, Vaughn, and Beckerman. (*See* Hill Aff. at ¶ 7.) Plaintiffs simply do not challenge the fact that Stewart made these repeated representations nor do they present evidence undermining the factual account described in the sworn statements of Fox and Hill. These facts are deemed admitted and it was based on the undisputed repeated misrepresentations of Stewart that Fox Brothers executed what they believed was a site-specific agreement.[7]

---

[7] Not only did Plaintiffs fail to present any evidence to controvert Defendants' evidence in their response to the Rule 56 motion, but they also failed, before the hearing, to specifically request or file a Rule 56(f) affidavit detailing why they were unable to obtain statements or affidavits from the union representatives involved in the events leading the misrepresentations. Only after oral argument do Plaintiffs seek

24

Second, however, there remains a triable issue of fact regarding Defendants'
excusable ignorance. The record establishes that Stewart presented an "addendum" to
the CBA for Joseph Fox to sign on behalf of Defendants, but there is no indication
whether Fox was provided the entire CBA agreement, whether he had an opportunity to
review its terms, or whether Defendants were negligent in failing to examine the
agreements contents.

In short, there is an absence of evidence in the current record sufficient for the
court to find excusable ignorance as a matter of law because "to establish a 'fraud in the
execution' defense, it is not enough that [the employer] was ignorant of the nature and
contents of the document being signed; in addition that ignorance must be excusable."
*Iron Workers Local No. 25 Pension Fund v. Allied Fence Sys.*, 922 F. Supp. 1250, 1259
(E.D. Mich. 1996); *see also Nyeholt Steel*, 976 F. Supp. at 690 (employer averred that

---

permission to file additional evidence in support of their response. (*See* Pls.' 5/5/05
"Ex-Parte Motion for Additional Time to File Supporting Documents . . . ."). Plaintiffs,
however, have failed to establish good cause showing why they could not have
presented evidence in a timely manner as required by the local rules. Plaintiffs' request
to present untimely additional evidence on a key factual point concerning the union's
representations about the parties' agreement is denied. Unlike evidence related to Fox
Brothers' employment relationship with its installers, evidence relating to the union
representative's statements was available to Plaintiffs and they make no showing to the
contrary.

The court also notes that it was not required to question Plaintiffs' counsel or
even conduct a hearing regarding Defendants' dispositive motion. *See* E.D. Mich. LR
7.1(e)(2). Plaintiffs had an obligation to file a response brief *with supporting
documentation.* E. D. Mich. LR 7.1(b). A district court's decision to conduct a hearing
on a motion does not automatically permit parties to later file additional documents or
provide additional evidence to support their positions. If such were the case, district
courts might well be reluctant to conduct hearings on motions, anticipating that parties
would attempt to supplement their defective filings or arguments. Untimely filings
disrupt the court's ability to manage its docket efficiently. The briefing schedule
established in the court's local rules sets forth deadlines for the parties to present their
positions to the court and oral argument is permitted because it can be an effective tool
for the court to further understand the parties' arguments *on the record as submitted.*

*he never was given a copy* of the underlying CBA and "thus was totally unaware of the fact that he was assenting to anything other than a one-job deal" and plaintiffs failed to refute this averment); *Gilliam*, 737 F.2d at 1503 (employer signed "standard forms" under impression that he would join the union for one job, unaware that the forms he signed included a CBA and the *union never provided him a copy or opportunity to review the contract*); *No. 25 Pen. Fund v. Klassic Servs.*, 913 F. Supp. 541 (E.D. Mich. 1996) (employer permitted to amend pleadings to add defense of fraud in the execution when union represented that the CBA would only last four days relating to one job site and union provided only a signature page for employer to sign).

Defendants argue that the current facts are significantly similar to those in *Nyeholt Steel.* While the court agrees that the facts of these cases are quite similar, there remains an important distinction.  In *Nyeholt Steel*, the employer averred that he was never provided a copy of the underlying CBA, he was totally unaware that the agreement was beyond the scope of a one-job deal, and the plaintiff-funds never refuted these averments.  *Nyeholt Steel*, 976 F. Supp. at 690.  Defendants' uncontroverted testimonial evidence establishes that Stewart pressured Mr. Fox to sign an addendum, however, there is no clear basis upon which the court can conclude whether Mr. Fox was ever given a copy of, or an opportunity to review, the entire CBA along with the addendum.  (*See* Fox Aff. at ¶ 6; Hill Aff. at ¶ 6.)

The current factual record is similar to the factual record considered by the district court in *Iron Workers' Local No. 25 v. Allied Fence and Security Sys.*, 922 F. Supp. at 1259.  In *Allied Fence*, ERISA trust funds brought suit under § 515 of ERISA to require the defendant to make benefit contributions.  *Id.*  Like Fox Brothers, the

26

employer-defendant in *Allied Fence* raised a fraud in the execution defense claiming

that its agent, Mr. Davidson, had no idea that he was signing a collective bargaining

agreement and that a union official misrepresented that the document he signed was a

temporary permit covering only one specific job. *Id.* at 1255. The plaintiffs moved for

summary judgment, arguing that the defendant's fraud claim was insufficient to excuse

a failure to make contributions to the ERISA-covered funds. *Id.* at 1252.

The court ultimately granted the plaintiffs' motion. *Id.* Just as in the instant case,

the *Allied Fence* court noted that the trust funds failed to rebut the employer's evidence

that the collective bargaining agreement was signed based on the union's

misrepresentation that it was only a site-specific temporary permit. *Id.* at 1259. The

district court explained the state of the record as follows:

> [N]o prior case has involved the stark facts presented in this case: there is
> no evidence to rebut Davidson's claimed lack of awareness that the
> document he signed was a CBA, but neither is there evidence suggesting
> an excuse for Davidson's failure to avail himself of the opportunity to
> review the document before signing it. While there may be no prior cases
> decided on these facts, the Court nonetheless finds that the rule that
> emerges from the case law is quite clear. In order to establish a "fraud in
> the execution" defense, it is not enough that Defendant was ignorant of
> the nature and contents of the document being signed; in addition, that
> ignorance must be *excusable. See Rozay's Transfer,* 791 F.2d at 774
> (quoting U.C.C. § 3- 305 cmt. 7). Or, as the Restatement phrases it, fraud
> in the execution arises only where a party "neither knows *nor has
> reasonable opportunity to know* of the character or essential terms of the
> proposed contract." Restatement (Second) of Contracts § 163 (1981)
> (emphasis added); *see also Resolution Trust Corp. v. Wilson,* 851 F.Supp.
> 141, 146 n. 5 (D.N.J. 1994) (citing the Restatement, and also noting that a
> party's negligent failure to avail himself of a reasonable opportunity to
> review a contract before signing it precludes that party from successfully
> asserting a "fraud in the execution" defense).
>
> In this case, Defendant has satisfied only half of this test, while altogether
> failing to address the other half. Davidson's affidavit attests to his
> ignorance of the nature or contents of the document he signed, and
> Plaintiffs offer nothing to rebut this evidence. However, neither Davidson's

27

affidavit nor any other evidence in the present record demonstrates, or
even implies, that this ignorance was excusable in light of Davidson's
ample and uncoerced opportunity to review the document he received
from Local 25.

*Id.* at 1259.

Just as in *Allied Fence*, the employer's fraud in the execution defense turns on

whether it had ample opportunity to review the CBA before signing it.  *See id.* at 1258;

*see also Bricklayers' Pension Trust Fund v. Chirco*, 675 F. Supp. 1083, 1084-87 (E.D.

Mich. 1987) (after bench trial, district court ruled that facts did not support employer's

fraud in the execution defense when union left the CBA at the job site for employer's

signature and returned to collect the signed agreement approximately two weeks later).

The instant record does not permit the court to conclude, as a matter of law, that Fox

Brothers did not have a "reasonable opportunity to know of the character or essential

terms of the proposed contract."  *Allied Fence Sys.* 922 F. Supp. at 1259 (quoting

Restatement (Second) of Contracts § 163 (1981)).  Defendants bear the burden on this

defense and a triable issue of fact remains.  Accordingly, the court will deny Defendants'

motion for summary judgment based on their fraud in the execution defense.[8]

## IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 7] is

DENIED IN PART.  Defendants are not entitled to summary judgment based on their

affirmative defense of fraud in the execution; however the court will hold the remaining

---

[8] The court is not persuaded by Plaintiffs' argument that Fox Brothers' defense
amounts to fraud in the inducement only.  Contrary to Plaintiffs' position advanced at
oral argument, they are not entitled to choose the nature of the defenses asserted by
Fox Brothers.  Fox Brothers has undoubtedly asserted a fraud in the execution defense.
Whether Defendants carry their burden on this defense is a separate question from the
characterization of the defense asserted.

portion of Defendants' motion in abeyance and will direct the parties to engage in targeted discovery concerning the employment relationship between Defendants and their hired installers (i.e. whether they were employees or independent contractors).

Discovery on the employee/ independent contractor status of Defendants' installers shall commence forthwith.  This initial discovery period is limited to the issues concerning whether Defendants' installers are independent contractors or employees and will end **June 24, 2005.**  The parties are directed to fully cooperate in this discovery and to expedite their responses to any discovery requests under the rules. During this initial discovery, unless good cause exists, responses shall be due within 14 days after receipt of a discovery request.

Unless discovery is extended, Plaintiffs shall file a supplemental written response addressing the remaining issues in Defendants' motion for summary judgment no later than **July 8, 2005**.  Defendants shall file their reply brief no later than **July 15, 2005.** Upon receipt of the supplemental briefs, the court will resolve the remaining portion of Defendants' motion and will issue a detailed and complete scheduling order under Rule 16 as required.

       S/Robert H. Cleland
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE


Dated:  May 23, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 23, 2005, by electronic and/or ordinary mail.

       S/Lisa G. Teets
       Case Manager and Deputy Clerk

29

(313) 234-5522