**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRUSTEES OF THE MICHIGAN REGIONAL
COUNCIL OF CARPENTERS EMPLOYEE
BENEFITS FUND, et al.,

                Plaintiffs,                    Case No. 05-CV-70262-DT

v.

FOX BROTHERS COMPANY and THOMAS J.
FOX,

                Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND
DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

On May 23, 2005, the court issued an "Opinion and Order Denying in Part

Defendants' 'Motion for Summary Judgment Pursuant to Rule 56.'"  In its order, the

court denied in part a motion for summary judgment filed by Defendants Fox Brothers

Company and Thomas J. Fox, and held part of the motion in abeyance while the parties

conducted additional discovery and submitted supplemental briefs.  The matter has now

been fully briefed[1] and, for the reasons stated below, the court will grant the remaining

_____

[1]  The court notes that the resolution of this matter was substantially delayed due
in large part to the state of the supplemental briefs filed by both parties.  Plaintiffs'
supplemental brief was largely devoted to legal issues not at issue and already
determined by the court in its May 23, 2005 order.  Further, the portion of the brief
actually devoted to the employee/independent contractor issue was either unsupported
by any citation to the record or, more troubling, supported by citations to the record
which were sometimes inaccurate or misleading.  Defendants brief similarly contained
many unsupported assertions of fact, with few pointed citations to any admissible
evidence.  After reviewing all of the submitted depositions and documents, it appears to
the court that Defendants assertions were, in fact, well-grounded.  Nonetheless, the lack
of many citations by Defendants and the lack of accurate citations by Plaintiffs has

portion of Defendants' February 24, 2005 "Motion for Summary Judgment Pursuant to

Rule 56." Additionally, the court will deny Plaintiffs' June 8, 2005 "Motion for Leave to

Amend Complaint to Add Additional Plaintiff."

## I. BACKGROUND[2]

Defendants Fox Brothers Company and Thomas Fox (collectively "Fox Brothers")

are engaged in supplying siding and roofing materials to the construction industry.

According to Fox Brothers, they do not employ any installers for the siding and roofing

materials that they supply, but instead they hire independent contractors to perform this

work. (Defs.' Mot. Br. at 2.)

Plaintiffs ("the Funds") are trustees for a series of employee-benefits funds within

the meaning of the Employee Income Retirement Security Act of 1974 ("ERISA"),

serving the carpentry industry. The Funds filed this action against Defendants pursuant

to Section 301 of the Labor Management Relations Act ("LRMA"), 29 U.S.C. § 185, and

Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) & 1145, as third-party

beneficiaries, to recover delinquent contributions that Defendants are allegedly

obligated to pay pursuant to the terms of a collective bargaining agreement. Plaintiffs'

complaint comprises three counts against Fox Brothers: Count I seeks to recover

benefit contributions pursuant to an August 1, 2001 - July 31, 2003 collective bargaining

agreement between the Michigan Regional Council of Carpenters ("MRCC" or the

"Union") and the Michigan Carpentry Contractors Association, Inc. signed by Fox

---

considerably slowed the disposition of this matter.

[2]The facts relevant to this motion are set out in detail in the court's May 23, 2005 order, and are restated in part here.

2

Brothers, via addendum, on December 16, 2003; Count II seeks to compel an audit of Fox Brothers' books and records; and Count III seeks to recover under the Michigan Building Contract Fund Act, Mich. Comp. Laws § 570.151 *et seq.*

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of its case upon which the non-moving party would bear the ultimate burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.  The moving party, however, need not support its motion with affidavits or other similar materials "negating" the opponent's claim.  *Id.* at 323.  Once the moving party meets this burden, the burden passes to the non-moving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element necessary to its case.  *Id.*  The non-moving party cannot simply rely on the allegations in the pleadings since the essence of summary judgment is to go beyond the pleadings

3

to determine if a genuine factual dispute exists.  The mere existence of a scintilla of evidence to support the non-moving party's position is insufficient, rather, evidence must exist on which the jury could reasonably find in favor of the plaintiff.  *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000).

## III.  DISCUSSION

For the reasons stated fully in the court's May 23, 2005 "Opinion and Order," the relevant inquiry before the court is whether the installers hired by Fox Brothers are employees or independent contractors.  If the installers are independent contractors, then (1) the provisions of ERISA do not apply (*see* 5/23/05 Order at 13-15) and (2) Fox Brothers are not obligated to make contributions to the Funds (*see id.* at 17).  Thus, if the court concludes that the installers are independent contractors, then Fox Brothers is entitled to summary judgment.

### A.  The Law of the Case

As an initial matter, the court notes that much of the Funds' brief is devoted to arguing issues which have already been determined by the court, and are now the law of the case.[3]  For clarity's sake, the court notes that, relevant to the court's analysis in this order, the following conclusions of law have already been determined and will not be relitigated:[4]

_____

[3]"The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

[4]This is not to say that there are not additional conclusions of law which the court has made and which are now the law of the case.  The court has simply reiterated what has been held in its previous order *which directly relate to the issues currently before the court.*

(1)  The status of Fox Brothers' installers as employees or independent contractors impacts the Funds' ability to recover contributions under ERISA, 29 U.S.C. §1145.  (5/23/05 Order at 12.)

(2) While Sections 502 and 515 of ERISA give a district court subject matter jurisdiction to hear an action brought by benefit plan trustees to enforce an employer's promise to make contributions, the protections of ERISA apply only to employees, and not to independent contractors.  Accordingly, if Fox Brothers' installers are independent contractors, ERISA does not apply.  (5/23/05 Order at 13-15.)

(3) The Funds cite to various provisions of the CBA which purportedly set forth an obligation for signatory employers not to subcontract work to non-union subcontractors, however, the "Liability" provision relates only to one fund identified in Article V.  Assuming the validity of the CBA signed by Fox Brothers on December 16, 2003, Section B of the "Sub-Contracting" Article requires payment only to the FACT Fund and no others.  Plaintiffs make no showing that they have standing to assert the rights of the FACT Fund and Plaintiffs' counsel acknowledged that neither the FACT Fund nor its trustees are plaintiffs in this case.  (5/23/05 Order at 13-16.)

(4) Benefit contributions to the various funds by signatory employers are required for work performed by employees covered by the CBA.  Because there was no contractual definition of "employee," whether contributions are owed to these various Funds under the terms of the CBA addendum executed on December 16, 2003 turns on whether Fox Brothers hires independent contractors or employees.[5]

---

[5]For this reason, all three counts of Plaintiffs' complaint are contingent on the categorization of the installers.  If the installers are independent contractors, and not employees, then (1) ERISA does not apply and Plaintiffs' Count I cannot succeed; and

5

### B.  The Employee/ Independent Contractor Distinction

Defendants argue that there is no issue of fact that the installers hired by Fox

Brothers are independent contractors, not employees as that term is defined under

ERISA, 29 U.S.C. § 1002(6).  As stated in the court's May 23, 2005 Order, courts apply

the common law agency test to determine whether a hired party is an independent

contractor or an employee under ERISA.  (*See* 5/23/05 Order at 9, n.3 (citing

*Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322 (1992).)  The "common law"

agency analysis requires the court to consider the following factors: (1) the hiring party's

right to control the manner and means by which the product is accomplished; (2) the

skill required by the hired party; (3) the duration of the relationship between the parties;

(4) the hiring party's right to assign additional projects; (5) the hired party's discretion

over when and how to work; (6) the method of payment; (7) the hired party's role in

hiring and paying assistants; (8) whether the work is part of the hiring party's regular

business; (9) the hired party's employee benefits; and (10) the tax treatment of the hired

party's compensation.  *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004);

*see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323-24, (1992).[6]  "Since the

_____

(2) Fox Brothers was not required to make contributions to any funds listed in the
Complaint and Plaintiffs' Count II & III cannot succeed.

[6]  In *Darden*, the Supreme Court explained the test as follows:

In determining whether a hired party is an employee under the general common
law of agency, we consider the hiring party's right to control the manner and
means by which the product is accomplished. Among the other factors relevant
to this inquiry are the skill required; the source of the instrumentalities and tools;
the location of the work; the duration of the relationship between the parties;
whether the hiring party has the right to assign additional projects to the hired
party; the extent of the hired party's discretion over when and how long to work;
the method of payment; the hired party's role in hiring and paying assistants;

common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'"  *Darden*, 503 U.S. at 324 (quoting *NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258 (1968)).  "The determination of employment status is a mixed question of law and fact.  Normally, a judge will be able to make this determination as a matter of law."  *Lilley v. BTM Corp.* 958 F.2d 746, 750 (6th Cir. 1992); *see also Weary v. Cochran,* 377 F.3d 522, 524 (6th Cir. 2004).

Having reviewed the briefs, and the supporting factual record, the court finds that the underlying facts in this case are primarily undisputed, and that the court may properly rule on the legal question of whether the undisputed facts establish an employee or independent contractor relationship.  The court will address each of the *Shaw* factors in turn.

### (1) The Hiring Party's Right to Control the Manner and Means by Which the Product is Accomplished

It is undisputed that Fox Brothers, not the installers, provides the materials for the job sites.  (*See* Joseph Fox Dep. at 22-24, Pls.' Ex. 5; Schalau Dep. at 20, Pls.' Ex. 4.) Nonetheless, because of the nature of Fox Brothers's business, this fact does not weigh in favor of finding an employee relationship.  Specifically, Fox Brothers sells building

---

whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323-24.  There is no substantive difference between this standard and the Sixth Circuit's standard in Shah, particularly because the Sixth Circuit has stated that "there is no one catch-all set of standards; a court should examine all incidents of the alleged employee/employer relationship, with the relative weight given to the various factors in the common-law analysis depending on the nature of the statutory context."  *Johnson v. City of Saline* 151 F.3d 564, 568 (6th Cir. 1998).

7

materials.  (Joseph Fox Dep. at 14, 29-30, Pls.' Ex. 5.)  As Joseph Fox testified, Fox

Brothers sells building supplies (and provides the labor) for specific job sites.  (*Id.* at 14;

Thomas Fox Dep. at 39, Pls.' Ex. 15.)  Thus, the fact that Fox Brothers provides the

materials does not weigh in favor of either an employment or a contractor relationship.

More pertinent to the court's analysis under this factor, however, is the issue of

tools.  Although from time to time Fox Brothers allows its installers to borrow a piece of

equipment, the installers for Fox Brothers primarily use their own tools.  (Ursic Dep. at

17-18, 36, Pl.'s Ex. 3; Hill Dep. at 44-45, Pls.' Ex. 6; Schalau Dep. at 20, 26-27, Pls.' Ex.

4; Joseph Fox Dep. at 46-47, Pls.' Ex. 5.)  Plaintiffs claim it is "common in the residential

construction industry for employees to provide their own tools," but Plaintiffs have not

supported this assertion with any accurate citation to the record.[7]   In the absence of

any contradictory evidence, the court operates under the traditional view that utilizing

your own tools is indicative of an independent contractor relationship. *See, e.g.,*

*Trustees of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.,* 395 F.3d

244, 250 (6th Cir. 2005); *Ware v. United States*, 67 F.3d 574, 580 (6th Cir. 1995).

This factor thus weighs in favor of finding that the installers are independent

contractors.[8]

### (2) The Skill Required by the Hired Party

"The degree of specialized skills or knowledge is also relevant in determining

---

[7]Instead, Plaintiffs' citation refers the court to Steven Ursic's testimony, who
stated only that he never borrows tools from Fox Brothers but rather buys his own tools
if he needs any additional tools while working for Fox Brothers.  (Ursic Dep. at 36, Pls.'
Ex. 3.)

[8]The parties devote a large portion of their brief to the issue of "control."  The
court will address their arguments under the fourth and fifth factors.

8

whether a hired party is an employee or independent contractor."  *Nichols v. All Points Transport Corp. of Michigan, Inc.,* 364 F. Supp. 2d 621, 631-632 (E.D. Mich. 2005)*; see also Rumpke v. Rumpke Container Service, Inc.,* 240 F. Supp. 2d 768, 772 (S.D. Ohio 2002) ("Work that does not require extensive education or skill is a factor indicating the relation of employer-employee.") (citing Restatement (Second) of Agency § 220(2)(h). Here, Plaintiffs assert, and the record supports, that the installers hired by Fox Brothers are moderately skilled.  (Pls.' Br. at 13.) (Hill Dep. at 57, Pls.' Ex. 6 ; Thomas Fox. Dep. at 41-42, Pls.' Ex. 15.)[9]  In such circumstances, this factor could weigh in either direction.  Nonetheless, absent evidence to the contrary, the court is inclined to find that, as with most trade occupations, the skills utilized by the installers are specialized enough to lean toward an independent contractor relationship.

### (3) The Duration of the Relationship Between the Parties

Plaintiffs argue that this factor weighs in favor of finding an employment relationship because "the current Almont work force has an on-going relationship with Fox for an average of five years."  (Pls.' Br. at 14.)  The court disagrees.  The relevant "duration" under this factor is not how many years the installers have been hired by Fox Brothers but rather, when hired, how long the relationship lasts.  *Rumpke v. Rumpke*

---

[9]The court notes that there is some disagreement between the deposed installers as to the degree of skill required to be an installer.  Ursic testified that installing roofs requires a high level of skill, while Schalau testified that he "could train a monkey to put shingles on a roof."  (Ursic Dep. at 18, Pls.' Ex. 3; Schalau Dep. at 29, Pls.' Ex. 4.)  Nonetheless, in light of the substantial agreement between the parties regarding the skill level, the court finds this testimony insufficient to create a genuine issue of fact.  Moreover, even if the court were to find that the skill level was minimal, this would not affect the court's ultimate conclusion that the installers were independent contractors.  *See Ware v. United States*, 67 F.3d 574, 578 (6th Cir. 1995) (finding that certain factors may be of greater or lesser importance depending on the circumstances presented).

*Container Service, Inc.,* 240 F. Supp. 2d 768, 773 (S.D. Ohio 2002) (finding relevant employment "relationship was one of a long-term, at-will employee, as opposed to *an ad hoc, per project, definite duration contractor*") (emphasis added); *see also Holliday v. Vacationland Federal Credit Union*, No. 3:03 CV 7493, 2004 WL 903902, *3 (N.D. Ohio 2004) ("An independent contractor, on the other hand, typically contractually arranges to complete a particular task within an agreed-upon time period."). Here, there is no dispute that the installers were hired per project, rather than indefinitely. (*See, e.g.,* Ursic Dep. at 45, Pls.' Ex. 3; Schalau Dep. at 37-38, Pls.' Ex. 4; Uleski Dep. at 32-33, 38, Pls.' Ex. 7.) Thus, this factor weighs in favor of finding an independent contractor relationship.

### (4) The Hiring Party's Right to Assign Additional Projects

Plaintiffs claim that Fox Brothers "had the ability to assign jobs to its installers; hire its installers; transfer its installers from site to site; and remove its installers from the job." (Pls.' Br. at 10.) The court, however, agrees with Defendants that Plaintiffs' citations are a bit misleading. While technically the witnesses testified about Fox Brothers ability to "assign" jobs, when read in context this testimony cannot be construed to mean that Fox Brothers could *unilaterally* require installers to work at particular locations or on particular jobs, as it could so require if the installers were employees. The installers were in fact unequivocal in their testimony that they were free to accept or reject jobs. Ursic testified that he had "free reign" as to whether he accepted or rejected a job from Fox Brothers. (Ursic Dep. at 45, Pls.' Ex. 3.) Similarly, both Uleski and Schalau testified he could accept or reject a job from Fox Brothers. (Schalau Dep. at 37-38, Pls.' Ex. 4; Uleski Dep. at 32-33, 38, Pls.' Ex. 7.) Additionally,

both Thomas Fox and Mr. Hill testified that Fox Brothers' installers are free to work for other companies at the same time that they are working for Fox Brothers.  (Hill Dep. at 61, 69, Pls.' Ex. 6; Thomas Fox. Dep. at 47-48, Pls.' Ex. 15.)  Indeed, the installers work with other contractors besides Fox Brothers, and Fox Brothers is not their sole source of income.  (Ursic Dep. at 44, Pls.' Ex. 3; Schalau Dep. at 13, Pls.' Ex. 4; Uleski Dep. at 10, Pls.' Ex. 7.)

The court finds that these undisputed facts support a finding that the installers were not employees.[10]

### (5) The Hired Party's Discretion Over When and How to Work

There is no dispute that the installers set their own hours when working on a Fox Brothers job site. (Ursic Dep. at 20, 45, Pls.' Ex. 3; Schalau Dep. at 27-28, Pls.' Ex. 4; Uleski Dep. at 29-30, Pls.' Ex. 7; Joseph Fox. Dep. at 62; Pls.' Ex. 5; Hill Dep. at 54, 59, Pls.' Ex. 6; Thomas Fox. Dep. at 42, 47-48, Pls.' Ex. 15.)

Further, despite Plaintiffs' arguments to the contrary, the court finds that there is no genuine issue of fact that Fox Brothers retained very little control over how the installers performed their jobs.  Schalau testified that representatives from Fox Brothers would periodically visit him on-site, but only to check on his progress to know when he would be ready for another project, or to deliver materials.  (Schalau Dep. at 23-24, Pls.' Ex. 4.)  Schalau testified that Fox Brothers never gave him direction on how to perform the installation.  (Schalau Dep. at 23, Pls.' Ex. 4.)  Uleski testified that Fox Brothers would send a representative to the job site periodically to check to see if the job was

_____

[10]The court finds immaterial the fact that Fox Brothers could initiate or terminate a working relationship with its installers, as this would be the same whether the installers were independent contractors or employees.

done correctly and completed, but that Fox Brothers never gave him direction as to how to do the job.  (Uleski Dep. at 20-23, Pls.' Ex. 7.)  Uleski also testified, however, that he had never actually seen anyone from Fox Brothers come out to check the job, he just assumed that they did.  (Uleski Dep. at 41, Pls.' Ex. 7.)  Mr. Fox testified that Fox Brothers's representative would visit job sites to see if their installers needed additional materials.  (Joseph Fox Dep. at 39-40, Pls.' Ex. 5.)  Other then providing the materials for the job, Joseph Fox testified that Fox Brothers does not direct its installers how to do the job, or give any specific time constraints.  (*Id.* at 42-43.)  Mr. Hill also testified that he does not tell an installer how to do any particular job.  (Hill Dep. at 39, Pls.' Ex. 6.)

To the extent that Fox Brothers monitors that a job is done completely or correctly, the court finds that Fox Brothers's control was "not the type of control that establishes an employer/employee relationship."  *Weary v. Cochran,* 377 F.3d 522, 526 (6th Cir. 2004) (finding that, although hired party's "independence was not entirely unrestrained" he was not an employee).  Regardless of whether the installers are employees or independent contractors, Fox Brothers has a legitimate interest in monitoring the quality of the work (and, for that matter, whether the work was done at all).  Further, while there is some evidence that Fox Brothers communicated the builders' requirements to their installers, (*see, e.g.* Joseph Fox. Dep. at 56, Pls.' Ex. 5; Hill Dep. at 62, Pls.' Ex. 6), this also does not indicate an employment relationship.  *See Ware v. United States,* 67 F.3d 574, 578 (6th Cir. 1995) ("In this era of exclusive licensing agreements and widespread franchising, a contract dictating the details of a business down to the color of its napkins and pens may be more an indicator of bargaining power or business practice than of an actual employer-employee

12

relationship."). Plaintiffs have not pointed to any admissible or convincing evidence[11]

that Fox Brothers maintained day-to-day control over how the installers performed their

installation. Based on the evidence submitted to the court, the court finds no genuine

issue of fact about the degree of control which the installers maintained over their

methods of work. Accordingly, this factor weighs against finding an employment

relationship.

### (6) The Method of Payment

The method of payment also supports a finding that the installers were

independent contractors. Fox Brothers' installers were paid based upon the square

footage of material installed, which is the industry standard. (Pls.' Supp. Br. at 12;

Defs.' Supp. Br. at 13, 15; *see also* Ursic Dep. at 41-42, Pls.' Ex. 3; Schalau Dep. at 4,

Pls.' Ex. 4; Uleski Dep. at 10, Pls.' Ex. 7; Joseph Fox. Dep. at 34-36, Pls.' Ex. 5; Hill

Dep. at 67, Pls.' Ex. 6) Interestingly, both parties claim this fact weighs in their favor.

Plaintiffs claim that Fox Brothers's installers were not able to realize a profit or suffer a

loss because of this pay scheme. However, as Defendants point out, the installers

---

[11]The court rejects Plaintiffs' attempt to rely on four unauthenticated documents as "evidence" of Fox Brothers degree of control over its installers. *See* Pls.' Exs. 8, 9, 10 & 11.) First, Plaintiffs did not question any witnesses regarding these documents and thus any interpretation which Plaintiffs attempt to pull out of them is nothing more than unverified speculation. Moreover, Defendants have submitted affidavits which directly refute the meaning which Plaintiffs have attempted to attribute to the documents. (*See* Joseph Fox. 7/15/05 Aff.; Hill 7/15/05 Aff.) The familiar rule that a party may not create a genuine issue of material fact by filing an affidavit that "essentially contradicts his previous deposition testimony" after a motion for summary judgment has been filed, *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997), is inapplicable in this case. Here, Defendants are not filing an affidavit contradicting an earlier deposition or other testimony under oath. Instead, Defendants are explaining documents about which they have not had an opportunity to previously testify.

13

could "realize a profit or a loss depending upon how quickly they can complete a job or how many other crew members they choose to hire for the job." (Defs.' Supp. Br. at 15.)

Moreover, there is no genuine issue that the installers were not paid hourly or, for example, based on a yearly salary as would an employee. Instead, the installers were paid per job, usually on a weekly basis. (Ursic Dep. at 44, 52, 54, Pls.' Ex. 3; Uleski Dep. at 12, Pls.' Ex. 7.) One installer testified that occasionally if he was running short on money he would request a draw, and would usually receive part of his payment before job completion. (Schalau Dep. at 17, 36, Pls.' Ex. 4.) Joseph Fox and Mr. Hill also testified that the installers are sometimes prior to the end of the job, depending on how big the job is. (Joseph Fox Dep. at 36, Pls.' Ex. 5; Hill Dep. at 30-31.) This does not change the fact that their payment was still based on the job, rather than hourly or yearly.[12] This factor thus weighs against a finding of an employment relationship.

### (7) The Hired Party's Role in Hiring and Paying Assistants

There is no factual dispute that Fox Brothers has no influence over who their installers hire or subcontract for work, (Ursic Dep. at 47, Pls.' Ex. 3; Uleski Dep. at 17, 37, Pls.' Ex. 7; Joseph Fox Dep. at 62, Pls. Ex. 5; Hill Dep. at 60, Pls. Ex. 6), which weighs in favor of finding that the installers were independent contractors.

---

[12]Plaintiffs rely on two unauthenticated documents as evidence for their assertion that the installers were paid by the hour for extra labor. (*See* Pls.' Br. at 13; Pls.' Ex. 17.) Plaintiffs have, however, failed to present any testimony or other admissible evidence which would explain the import of the documents. At most, this "evidence" raises a mere scintilla of evidence in support of their position, and certainly does not create a genuine issue of material fact regarding the method of payment. *Anderson*, 477 U.S. at 250. ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

14

### (8) Whether the Work is Part of the Hiring Party's Regular Business

The undisputed facts establish that it is a regular part of the business of Fox Brothers to provided labor for specific job sites.  (*See, e.g.,* Joseph Fox Dep. at 14, Pls.' Ex. 5; Thomas Fox Dep. at 39, Pls.' Ex. 15.)  It is not, however, the sole portion of Fox Brothers's business, as the labor is provided in connection with their business of selling building materials.  Accordingly, this factor weighs slightly in favor of finding an employment relationship.

### (9) The Hired Party's Employee Benefits

There is no dispute that Fox Brothers does not provide employee benefits to their installers. (Ursic Dep. at 23, 46, Pls.' Ex. 3 Schalau Dep. at 30, 37-38, Pls.' Ex. 4; Uleski Dep. at 32, Pls.' Ex. 7 Joseph Fox Dep. at 62, Pls. Ex. 5; Hill Dep. at 60, Pls.' Ex. 6; Thomas Fox. Dep. at 41-42, Pls.' Ex. 15.)  This factor weighs against an employment relationship.

### (10) The Tax Treatment of the Hired Party's Compensation

For tax purposes, Fox Brothers's installers are treated as independent contractors, inasmuch as they are provided with IRS form 1099.[13]  (*See* Defs.' Supp. Br. at 4-5; *see also* Defs.' Exs. B & C; Ursic Dep. at 23, Pls. Ex. 3; Schalau Dep. at 16, Pls.' Ex. 4; Uleski Dep. at 32, Pls.' Ex. 7; Joseph Fox Dep. at 62, Pls. Ex. 5; Hill Dep. at 60, Pls.' Ex. 6 Thomas Fox. Dep. at 41-42, Pls.' Ex. 15.)  Accordingly, this fact also weighs in favor of finding an independent contractor relationship.  *See W & S Distrib., Inc. v. United States*, No. 95-10158, 1996 WL 636119, *1 (E.D. Mich. July 22, 1996). ("Forms

---

[13]The court is not persuaded by Plaintiffs' implication that Forms 1099 bear no relevance in the employee/independent contractor analysis because employees are allegedly commonly misclassified.  *See* Pls.' Supp. Br. at 6.

15

1099 . . . are properly issued to independent contractors, reporting payments made to them by the company engaging their services.  Forms 1099 are the approximate analog to Forms W-2 which report the wage income of employees.").

### 11  Conclusion Regarding Employee/Independent Contractor Distinction

Having reviewed all of the relevant incidents of the relationship between Fox Brothers and its installers, the court concludes as a matter of law that the installers are independent contractors and not employees.  Aside from the fact that the installation was a regular party of Fox Brothers's business, the remaining factors all weigh heavily in favor of finding an independent contractor relationship.  *See Weary v. Cochran* 377 F.3d 522, 528 (6th Cir. 2004) ("While at least two factors weigh in favor of characterizing Weary as an employee--i.e., the duration of the relationship and the fact that Weary's work was a regular part of the hiring party's business--those factors do not offset the overwhelming evidence that compels the opposite conclusion.").  Accordingly, the court will grant the remaining portion of Defendants' February 24, 2005 "Motion for Summary Judgment Pursuant to Rule 56."

### C.  Motion for Leave to Amend Complaint

Also pending before the court is Plaintiffs' June 8, 2005 "Motion for Leave to Amend Complaint to Add Additional Plaintiff."  The matter has been fully briefed and the court concludes that a hearing on the motion is not necessary.  *See* E.D. Mich. LR 7.1(e)(2).  The court will deny the motion.

The decision whether to grant leave to amend the pleadings is governed by Federal Rule of Civil Procedure 15.  Rule 15 provides that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by

written consent of the adverse party; and leave shall be freely given when justice so

requires." Fed. R. Civ. P. 15(a). "In the decision whether to permit an amendment,

some of the factors which may be considered by the trial court are undue 'delay in filing,

lack of notice to the opposing party, bad faith by the moving party, repeated failure to

cure deficiencies by previous amendments, undue prejudice to the opposing party, and

futility of amendment.'" *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130

(6th Cir. 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.

1973)).

Here, Plaintiffs seek leave to amend their complaint to add an additional plaintiff,

the Michigan Regional Council of Carpenters Fund for the Advancement of the

Carpentry Trade (the "FACT Fund"). Plaintiffs' motion was filed after the court issued

its May 23, 2005 order, but before the parties filed their supplemental briefs. Plaintiffs'

motion comes, no doubt, as a reaction to the court's holdings in the May 23 order that

(1) the Liability provision of the CBA requires payment only to the FACT Fund and (2)

the current Plaintiffs had no standing to assert an action on behalf of the FACT Fund.

(*See* 5/23/05 Order at 16.)

Plaintiffs' initial motion did not clearly articulate the basis for the proposed

amendment, but they have expanded on their argument in their reply.[14]  Defendants

---

[14]The court notes that Plaintiffs' motion was not accompanied by a brief, as is
required by the local rules. *See* E.D. Mich. LR 7.1(c). Further, Plaintiffs' reply and
"reply brief" totaled approximately thirteen pages in length, in violation of the five-page
limit imposed by E.D. Mich. LR 7.1(c)(3). The local rules provide for the progression
of briefs, in part, so as to allow the opposing party a reasonable opportunity to respond to
the issues raised in the motion. Here, because Plaintiffs did not fully explain their
arguments until their reply, Defendants did not have an adequate opportunity to
respond. The court's usual inclination would be to strike one or both of Plaintiffs'

argue that the FACT Fund is not a "necessary party" under Federal Rule of Civil

Procedure 19 and the court should decline to allow permissive joinder under Federal

Rule of Civil Procedure 20.  The court agrees.

### 1.  Mandatory Joinder

When confronting a motion under Rule 19 the "court must first determine

'whether a person is necessary to the action and should be joined if possible.'"

*PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 200 (6th Cir. 2001) (citing *Soberay Mach. &*

*Equip. Co. v. MRF Ltd., Inc.,* 181 F.3d 759, 763-64 (6th Cir.1999)).  Specifically, under

Rule 19:

> A person who is subject to service of process and whose joinder will not
> deprive the court of jurisdiction over the subject matter of the action shall
> be joined as a party in the action if (1) in the person's absence complete
> relief cannot be accorded among those already parties, or (2) the person
> claims an interest relating to the subject of the action and is so situated
> that the disposition of the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability to protect that
> interest or (ii) leave any of the persons already parties subject to a
> substantial risk of incurring double, multiple, or otherwise inconsistent
> obligations by reason of the claimed interest.

Federal Rules of Civil Procedure Rule 19.  "The first joinder standard, which is

prescribed in Rule 19(a)(1), is designed to protect those who already are parties by

requiring the presence of all persons who have an interest in the litigation so that any

relief that may be awarded will effectively and completely adjudicate the dispute."

*Chaness & Simon, P.C. v. Simon*, 241 F. Supp. 2d 774, 779 (E.D. Mich. 2003) (citing 7

---

improper filings or allow Defendants an opportunity to file a sur-reply, however, because
the court will deny Plaintiffs' motion based on what has already been presented, the
court will simply proceed on the briefs as submitted.

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1604 (2001)).  The second joinder standard, which is set out in Rule 19(a)(2), "relates to situations in which the action cannot be effectively adjudicated because the absentee claims an interest in the subject matter of the action and disposing of the case in the person's absence may prejudice either those already before the court or the absentee."  *Id.*

The court finds that mandatory joinder is not implicated in this case.  First, Plaintiffs have not shown that complete relief between the parties cannot be afforded without the FACT Fund's presence.  The fact that the FACT Fund may assert a subsequent action against Defendants is not enough especially where, as here, Defendants themselves are not requesting the joinder.  *See Sales v. Marshall,* 873 F.2d 115, 121 (6th Cir. 1989) ("Rule 19(a)(1) focuses 'on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.'") (quoting *LLC Corp. v. Pension Benefit Guaranty Corp.,* 703 F.2d 301, 305 (8th Cir. 1983)).  Moreover, Plaintiffs have not identified any prejudice to themselves or the FACT Fund if it is not joined in this case.  While they intimate that refusing to allow joinder could result in inconsistent rulings, this is not enough to trigger the mandatory joinder provisions of Rule 19.  *See Bellaire Corp. v. Apfel*, No. C-2-99-532, 2000 WL 33910112 (S.D. Ohio Sept. 12, 2000) ("Although another court in a subsequent litigation may consider the findings of this Court . . . the threat of negative precedent is not enough to require compulsive joinder.  *See Janny Montgomery Scott, Inc.*, 11 F.3d 399, 407 (3d Cir. 1993) (finding a similar 'negative precedent' argument unpersuasive and insufficient to require joinder under Rule 19).").   The court thus finds that the FACT Fund is not a necessary party under Rule 19 and mandatory joinder is not required.

19

## 2. Permissive Joinder

Alternatively, Plaintiffs request that the FACT Fund be added under the permissive joinder rule of Federal Rule of Civil Procedure 20, which provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20. Rule 20 thus provides "for permissive joinder where parties are related to the case by both a common question of law and a common transaction." *Reynolds v. Ferguson,* 73 F. Supp. 2d 841, 843 (W.D. Mich. 1999) (citing *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 682 (6th Cir.1988)).

While joinder should be given liberally, such joinder is also based on fairness. *See id.* (citing 4 James Wm. Moore, et al., *Moore's Federal Practice* § 20.02[1][a] n. 11-12 & accompanying text (3d. ed.1998)). To that end, "Rule 20(a) is designed to promote judicial economy and trial convenience." *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D. Tenn. 2001) (citing *See Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974); *Ohio ex rel. Fisher v. Louis Trauth Dairy,* 856 F.Supp. 1229, 1239 (S.D.Ohio 1994); *McCormick v. Mays,* 124 F.R.D. 164, 167-68 (S.D.Ohio 1988)). In this case, however, these considerations are simply not present because the underlying action has been concluded on summary judgment grounds. The court cannot find that allowing joinder would promote efficiency when, if joinder were not granted, the case would be over.

20

The court recognizes that Plaintiffs' motion was filed relatively early in the litigation, at least temporally.  Nonetheless, Plaintiffs' motion was filed in the midst of the briefing of a summary judgment motion which was ultimately successful.  Allowing joinder at this point would prolong the resolution of this action for the parties who are otherwise entitled to closure.  Other than the nominal cost of a filing fee, the court can discern no prejudice with denying Plaintiffs' motion and requiring the FACT Fund to proceed, if at all, in a separate action.[15]  Accordingly, Plaintiffs' motion for leave to amend will be denied.

## IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 7] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' June 8, 2005 "Motion for Leave to Amend Complaint to Add Additional Plaintiff" [Dkt # 16] is DENIED.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 27, 2005
I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 27, 2005, by electronic and/or ordinary mail.

 S/Lisa Wagner

---

[15]This conclusion is reinforced by the fact that the Plaintiffs have not persuaded the court that it retains subject matter jurisdiction over this matter if it were to proceed solely on the FACT Fund's allegations.  As Defendants point out, there is some doubt as to whether a FACT Fund constitutes an employee benefit fund covered by ERISA.

Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\05.70262.Fox.Brothers.SJ.Order.wpd